249 So.2d 896 (1971)
259 La. 246
Constance Emley CHAMBERS
v.
Acy Lee CHAMBERS (two cases).
Nos. 50825, 50851.
Supreme Court of Louisiana.
May 4, 1971.
Concurring Opinion June 3, 1971.
Dissenting Opinion May 11, 1971.
Rehearing Denied June 7, 1971.
Dissenting Opinion June 25, 1971.
Tillery & Cooper, Robert E. Tillery, Stanford O. Bardwell, Jr., Baton Rouge, for Acy Lee Chambers.
Brumfield & Brumfield, Sylvia Roberts and H. Alva Brumfield, Baton Rouge, for Constance Emley Chambers.
HAMLIN, Justice:
In the exercise of our supervisory jurisdiction we directed Certiorari to the Court *897 of Appeal, First Circuit, for review of its judgment which remanded this partition matter to the trial court for further proceedings consistent with the views expressed in its opinion. Art. VII, Sec. 11, La. Const. of 1921; 238 So.2d 30; 256 La. 851, 239 So.2d 357. Constance Emley Chambers and Acy Lee Chambers separately applied to this Court for Certiorari; both applications were granted, and the matters are now consolidated.
The basic question presented for our determination is whether funds received, after divorce, in settlement of a claim filed under the Federal Employers' Liability Act, 45 U.S.C.A., Sec. 51 et seq.,[1] for damages resulting from personal injuries suffered by Acy Lee Chambers while married to and living in community with Constance Emley Chambers form a part of the Chambers' terminated marital community subject to partition.
The facts leading to the filing of this suit are stipulated by the litigants and made a part of this record. We shall narrate in chronological order facts of the record we think are pertinent and shall also narrate those facts necessary for an understanding of our decision.
Acy Lee Chambers (hereinafter referred to as "Acy") and Constance Emley Chambers (hereinafter referred to as "Constance") were married on February 26, 1958, and continued to live together until Constance left the marital domicile on April 5, 1967. Three children were born of the marriage.
On June 11, 1966, while employed as a flagman by the Illinois Central Railroad Company, Acy sustained serious bodily injuries in the course of his employment. On November 1, 1966, he filed suit in the District Court of the United States, Eastern District of Louisiana, Baton Rouge Division, against Illinois Central Railroad Company, under the Federal Employers' Liability Act. He prayed for judgment in the sum of $1,150.000.00.[2] On May 16, 1967, *898 Acy filed suit in the Nineteenth Judicial District Court, Parish of East Baton Rouge, against Delta Concrete Products Company, Inc. and Continental Casualty Company for $1,150,000, alleging that at the time of the accident a train of cars was being moved over a house track on the premises of Delta Concrete Products Company, Inc.
On April 26, 1967, Constance filed suit in the Family Court, Parish of East Baton Rouge, against Acy for separation from bed and board on the grounds of cruelty. She was granted the temporary custody of the children, and a temporary restraining order issued April 26, 1967, enjoining Acy from alienating or encumbering the community.
On May 16, 1967, Acy answered Constance's suit for separation and prayed that her demands be rejected and her suit dismissed. He also prayed that the custody and support rules previously issued be vacated. He averred in Article 28 of his Answer that Constance had committed adultery on three enumerated occasions.
After hearing, May 19, 1967, the Family Court granted the custody of the two younger Chambers children to Acy and ordered that the oldest child be delivered to him not later than the third day after the close of the school year for 1967.
On July 17, 1967, Constance filed an amended petition in which she alleged that she was informed and believed that Acy was negotiating with the Illinois Central Railroad Company, Delta Concrete Products Company, Inc., and Continental Insurance Company for settlement of his claim for damages for personal injuries received on June 11, 1966. She prayed that the three companies be enjoined from paying any settlement to Acy without including her name on the draft or check. On July 24, 1967, after hearing, the Family Court ordered that preliminary injunctions issue directed to Acy, Illinois Central Railroad Company, Delta Concrete Products Company, Inc., and Continental Casualty Company, restraining and prohibiting them from disposing of, alienating or encumbering all the property, rights, credits, and claims belonging to the community of acquets and gains existing between Acy and Constance.
On September 5, 1967, Acy filed a reconventional demand in Constance's suit for separation. He averred that Constance had committed adultery, reiterated the prayer of his original answer, and prayed for judgment in his favor granting him an absolute divorce and awarding him the permanent care and custody of his children. Constance answered the reconventional demand on September 5, 1967; she denied that she had committed adultery and prayed that Acy's demands be rejected. The Family Court rendered judgment, September 5, 1967, in favor of Acy and against Constance, decreeing a final divorce "a vinculo matrimonii"; Acy was awarded the permanent care and custody of the children.
On September 8, 1967, the Family Court ordered that the injunctions supra be rescinded, and authorized the three companies supra to negotiate and complete a settlement of the claims and litigation asserted by Acy and/or Constance and make payment in connection with said settlement.
On September 9, 1967, a settlement and release in full for Acy's personal injuries claim was executed. The Illinois Central Railroad Company, Delta Concrete Products Company, Inc., and Continental Casualty Company were released and discharged. The release, signed by both Acy and Constance, recites in part:
"And now herein comes and appears Mrs. Constance Marie Chambers, who acknowledges and declares that she was married to and living as his wife with *899 Acy L. Chambers at the time of his injuries on June 11, 1966, while he was employed by the Illinois Central Railroad Company; that she is fully familiar with, approves and agrees to the settlement herein made by him, and having read and understood the release, does by these presents release and forever discharge from any claims of any sort or nature whatsoever she has, had or may have against the Illinois Central Railroad Company, the Delta Concrete Products Company, Inc. and the Continental Casualty Company, or any of the employees, agents or officers of all three of said companies, arising out of or resulting from said injuries to Acy L. Chambers and as evidence thereof she acknowledges and executes this Settlement and Release in Full of her own free will and accord and for the uses and purposes herein set forth, together with Acy L. Chambers."
The amount of the settlement was $245,658.83, of which $211,000.00 was undesignated. $34,658.83 represented medical and hospital charges of $31,158.83 and advances of $3,500.00 made to Acy from July 1, 1966 through November 1, 1966. A pretrial stipulation contained in the record recites that the full settlement was paid $122,829.42 by Illinois Central Railroad Company, $22,829.42 by Delta Concrete Products Company, Inc. (the Court of Appeal states the amount to be $22,829.48), and $100,000.00 by Continental Casualty Company. The settlement agreement recites that Acy authorizes the Illinois Central Railroad Company to withhold and deduct from its payment of $211,000.00 the sum of $1,530.00, the amount paid to him in Railroad Retirement benefits. An escrow agreement, to be discussed infra, recites, "The draft for Two Hundred Eleven Thousand ($211,000) Dollars issued by Illinois Central Railroad Company shall be payable to Acy Lee Chambers, Constance Marie Emley Chambers, and Robert E. Tillery [attorney], as their interest may appear." The net amount received is recited in brief to have been $209,470.00.
Acy and Constance could not agree as to whether she was entitled to any of the proceeds of the settlement, and Constance filed suit on October 4, 1967, for a partition of the community of acquets and gains which had formerly existed between her and Acy. She alleged that Acy's action for damages, supra, was a part of the community and prayed for one-half of the amount of the settlement made by the Illinois Central Railroad Company, et al.
Acy answered Constance's petition, contending that the settlement funds were his separate property under the Federal Employers' Liability Act. Alternatively, he pleaded that the funds were his separate property under Louisiana law. In the still further alternative, he pleaded that Arts. 2402 and 2334 of the Revised Civil Code are unconstitutional in that they denied him equal protection of the laws.
On September 9, 1967, Acy and Constance entered into an escrow agreement, wherein it was stated that a dispute exists between them as to whether certain funds are property belonging to the community of acquets and gains formerly existing between them or whether the funds are the separate funds of Acy. The agreement further recites that pending settlement of the dispute, Acy and Constance agree to deposit the funds in an escrow account.
Community debts of $30,468.86 were not in dispute at the time of trial and had been paid. Disputed debts amounted to $7,739.12, and this amount was deposited in the First National Bank of Denham Springs, the escrow bank.
Prior to filing suit against the Illinois Central Railroad Company, Constance entered into a contract for legal services for a contingent fee of one-fourth of the amount to be recovered. Acy was ill at the time and subsequently entered into a new contract with the same lawyer for *900 a contingent fee of one-third of the amount to be recovered. $52,083.51, representing the remainder of the contested settlement funds, was deposited in the excrow account by escrow agreement. This amount was arrived at by applying the one-third contract fee.
The matter was submitted to the trial court on stipulation and documentary evidence.
The trial court commenced its reasons for judgment by stating, "This is an action for partition of a sum of money held in escrow." It found that, "In light of the cited cases and the clear statutory authority of Louisiana and Louisiana Civil Code articles 2402 and 2334, it is the court's opinion that the plaintiff is entitled to a partition in kind, of the community of acquets and gains heretofore existing between the plaintiff and defendant, including an undivided one-half interest in the $211,000.00, the amount received in damages by the defendant for injuries sustained while the plaintiff and defendant were living together as man and wife."
The trial court rendered judgment (read and signed October 10, 1969) in favor of Constance and against Acy in the amount of $60,021.01, plus interest on $52,083.57; the First National Bank of Denham Springs was ordered to pay Constance $59,822.63, plus the highest rate of interest paid by the bank on $52,083.51 from September 9, 1967, until paid. The trial court arrived at the amount due Constance in the following manner:

"Total amount received in settlement ..........$211,000.00
"Total amount of community debts
 agreed upon ................................... 30,468.86
"Amount in special account....................... 7,739.12
"One-half amount of settlement due
 plaintiff .................................... 105,500.00
"Less Attorney's fee, one-fourth [the
 trial court allowed the attorney onefourth
 of Constance's one-half] ...................... 26,375.00
 __________
"Amount due plaintiff before wife's
 portion of community debts have been
 deducted ...................................... 79,125.00
"One-half of community debts agreed
 upon ......................................... 15,234.43
 __________
"One-half of $7,739.12 .......................... 3,869.56
"Net amount due plaintiff .....................$ 60,021.01"

Acy appealed from the judgment of the trial court and contended, (1) that the cause of action under which the compromise settlement was made was based solely on the Federal Employers' Liability Act, supra; (2) that to permit a former wife of an injured claimant to assert a community property interest under Louisiana law where such compromise is the result of a federal statute would violate the Federal Constitution and would be an unconstitutional application of Louisiana law; and, alternatively, (3) that Art. 2334 of the Revised Civil Code is an unconstitutional infringement upon the U. S. Constitution. Lastly, Acy submitted that the matter should be remanded to the trial court in order to provide a full and complete partition of the community.
For cogent reasons recited in its opinion, the Court of Appeal did not agree with Acy's three contentions supra. However, it saw fit to remand the matter and stated:
"The settlement, with the exception of some $34,658.83, was not itemized. The balance of the settlement of $211,000.00 is of such magnitude that it clearly indicates to us that it was not only for personal pain and suffering but must have included recovery for future disability, medical expenses and future loss of earnings. We believe that justice dictates that the matter be remanded to the trial court for the purpose of taking testimony relative to the nature of the injuries (personal and special) sustained by defendant so as to determine the basis for the compromise and to allocate amounts to such items as may have been included in the settlement."
The Court of Appeal noted that other assets of the community were not partitioned. It also stated that the record did not contain sufficient facts to resolve the issue of attorneys' fees.
The matter is now before us for our disposition. Counsel for Constance submit "that the judgment of the Court of Appeal * * * be reversed, and the judgment *901 of the district court placing Mrs. Chambers in possession of one-half of the settlement received by Mr. Chambers for his injuries, and holding that her agreement relative to payment of a one-quarter attorney fee on her portion be reinstated and made the judgment of this Court."
Acy assigns the following errors to the judgment of the Court of Appeal:
1. The Court erred in failing to recognize federal law as dispositive of the question of the classification of funds derived in settlement of Acy's claim under the Federal Employers' Liability Act.
2. The Court erred in holding that an action for personal damages under the Federal Employers' Liability Act fell into the community in part rather than belonging exclusively to the injured employee (Acy). He prays that this Court allow him to retain the full cash sum paid after the dissolution of the community or at the very least, allow the case to be remanded in accordance with the decision rendered by the Court of Appeal. Counsel for Acy argue that the Federal Employers' Liability Act, supra, gives him as the injured employee the sole and exclusive right to recover any and all compensation which may flow from his claim. They state that the issue seems to reduce itself to whether the laws of the State of Louisiana, notably Art. 2334 of the Revised Civil Code, are to govern the classification and distribution of funds derived, after the dissolution of the community, under a federal cause of action, or whether the federal statute and jurisprudence thereunder will determine the manner in which the funds are distributed after the dissolution of the community. Counsel submit that the issue of the wife's interest in the cause of action or settlement or judgment is a field covered by the Federal Employers' Liability Act, and such statute provides a right of action for recovery for the injuries to no one but the injured party prior to his death. They state that the inquiry in the instant case must be directed to the moment in time at which the community was dissolved.
Each case has a separate life of its own and rests upon its own facts and circumstances. Herein, Acy survived his injury of June 11, 1966. Therefore, we do not disagree that as an injured railroad employee, the right to sue timely for injuries suffered was exclusive to Acy under the Federal Employers' Liability Act. "The right to sue is conferred either by statute or the jurisprudence, whereas the cause to sue is legally determined after investigation of the facts presented." Duplain v. Wiltz, La.App., 174 So. 652, 655 (1937). "We say `cause of action' as distinguished from `right of action' for the reason that these two exceptions have been the subject of some confusion as they are invariably employed indiscriminately by members of the bar. Generally speaking, an exception of no right of action serves to question the right of a plaintiff to maintain his suit, i. e., his capacity to sue or his interest in the subject matter of the proceeding, whereas an exception of no cause of action addresses itself to the sufficiency in law of the petition and the exhibits attached thereto. * * * The latter is triable entirely on the face of the papers, while evidence may be received under an exception of no right of action for the purpose of showing that plaintiff does not possess the right he claims or that the right does not exist. * * *" Roy O. Martin Lumber Co., Inc. v. Saint Denis Securities Co., Inc., 225 La. 51, 72 So.2d 257, 258, 259 (1954). The exception of no right of action is the exception of want of interest or capacity and relates specifically to the person of the plaintiff. Its function is to raise the question of whether a remedy afforded by the law can be invoked by a particular plaintiff. Maryland Casualty Co. v. Gulf Refining Co., La.App., 95 So.2d 734, 736 (1957). See, Bielkiewicz v. Rudisill, La.App., 201 So.2d *902 136; Richard v. National Surety Corporation, La.App., 99 So.2d 831; LSA-C.C.P. Art. 927. The Federal Employers' Liability Act is in the nature of a compensation statute for those falling within its ambit, and all state laws are superseded by the Act insofar as they may attempt to cover the same field. Phillips v. Houston Fire & Casualty Insurance Company, D.C., 219 F.Supp. 420 (1963). The Federal Employers' Liability Act has a uniform operation which cannot be deflected by local statutes. Burnett v. New York Central Railroad Company, 380 U.S. 424, 85 S.Ct. 1050, 13 L.Ed.2d 941. Acy therefore properly brought his action for damages under the Federal Employers' Liability Act, and, as stated supra, was the proper party to assert it.
The fact that one party has the exclusive prerogative of asserting a right does not necessarily mean that a second party might not have an interest in the cause. The second party might lose his interest in the cause if the right is not exercised by the first party, but as long as the cause is alive, the second party's interest exists. "A cause of action is substantive, the entire state of facts that give rise to an enforceable claim, or in other words, the actual right or obligation which is sought to be enforced." Maryland Casualty Co. v. Gulf Refining Co., La.App., 95 So.2d 734, 736. We therefore find that Acy's exclusive right to bring suit under the Federal Employers' Liability Act and the cause of action for damages resulting from his personal injuries were not one and the same thing. As stated supra, the instant cause of action for damages arose while Acy was married to and living in community with Constance. A cause of action is property, Cf. LSA-C.C.P. Art. 426, and Acy was entitled to judicial determination to reduce the instant cause of action to judgment. National Surety Corp. v. Standard Accident Ins. Co., 247 La. 905, 175 So.2d 263; Dupre v. Consolidated Underwriters, La.App., 99 So.2d 522. We find nothing in the Federal Employers' Liability Act or in the jurisprudence thereunder which relieves a successful plaintiff bringing suit under the Act or a plaintiff executing a compromise after filing suit from having to share the funds or damages he receives with certain enumerated parties if he is commanded to do so by state law. We conclude that under Louisiana law, to be discussed infra, the cause of action herein and the settlement funds were community property.
Article 2334, LSA-C.C., provides in part that, "Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property." The article further provides that actions for damages resulting from offenses and quasi offenses (committed against the wife) and the property purchased with all funds thus derived are the wife's separate property. Article 2402, LSA-C.C., provides, in part, "But damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone." We interpret these articles to mean that a husband's cause of action for damages resulting from a tort committed against him while living with his wife in community is community property. It follows that the damages received by judgment of court or the funds received in settlement of a compromise of such cause of action are also community property. There is a disparity in the treatment of husband and wife, but "The office of judges is jus dicere not jus dare, to interpret law, not make law or give law. The instant case is a matter that addresses itself to the legislature not to the courts. * * *" Madere v. Long, 231 La. 498, 91 So.2d 771.
We agree with the Court of Appeal's finding that: "Defendant's argument that Articles 2334 and 2402 of the Civil Code *903 are violative of Article 6, § 2 and Amendment 14 § 1 of the United States Constitution is in our opinion without merit. While we concede to defendant that the constitutionality of these articles has never heretofore been raised, we find that it is clearly within the ambit of authority granted to a state to prescribe laws governing its citizens relative to their respective estates, inheritance, and the establishment and the guidelines for a marital regime of its citizens."
As stated supra, on September 5, 1967, Acy filed a reconventional demand in the separation suit previously filed by Constance; he was granted an absolute divorce on the same day. The community of acquets and gains between Acy and Constance therefore terminated and was dissolved on September 5, 1967. See, Art. 155, LSA-C.C. On September 9, 1967, four days after divorce, the settlement agreement supra was signed and executed, and settlement funds were paid. Under our findings supra, the settlement funds were community property, and Constance was entitled to her proportionate share of them. We note from the stipulated facts and documentary evidence, supra, that Constance participated in bringing about the settlement; she signed the settlement agreement and was one of the payees of the check given at the time of execution and release.
We agree with the Court of Appeal that Constance is not entitled to participate in that portion of the settlement funds that compensate Acy for damages accruing after the dissolution of the community regime. Cf. Talley v. Employers Mutual Liability Ins. Co., 181 So.2d 784, 248 La. 785, 181 So.2d 783. We also agree with the finding of the Court of Appeal that the settlement funds must have included amounts for Acy's recovery for future disability, his medical expenses, and his future loss of earnings. We find, however, that the thrust of Acy's argument throughout these entire proceedings has been that he is entitled to all of the settlement funds under the Federal Employer's Liability Act or Louisiana law. He has been interested in no other asset of the community. On application for rehearing to the Court of Appeal, he stated "that a decision on the question of attorneys' fees is possible under the facts as contained in the record and no useful purpose will be served to remand this question." He offered no alternative proof as to a proportionate adjustment of the settlement funds and made no expression as to what he could prove as to loss of earnings and disability. As a last resort, he asks this Court for remand; he makes no showing as to what he will prove in the trial court.
We are cognizant of the fact that Acy was injured in 1966 and that this is the year 1971. The trial court, as stated supra, considered this matter as a partition of settlement funds or funds held in escrow, and it also considered community debts and attorneys' fees. It awarded Constance $60,021.01, a small amount in comparison to the entirety of the settlement funds, and held her responsible for her share of community debts. She did not appeal, acquiescing in the judgment of the trial court, which she now asks us to affirm.
Able counsel for Constance argue persuasively with respect to remand: "The only testimony which could provide any assistance whatsoever would be that bearing on the injuries sustained by defendant, and the recollections of the parties to the settlement negotiations. It will be virtually impossible to reconstruct exactly how much weight was given by the negotiators to each of the items with respect to the future pain and suffering and loss of wages. This Court is well aware of the fact that in arriving at settlements, many other factors enter into the conclusion of the agreement besides a mechanical totalling of past, present and future elements of damages. Even *904 more important possibly is the fact that much of the `evidence' would be composed of testimony of the defendant and his attorneys, whose statements must be designated as self-serving. Unquestionably much self-interest would be involved in such testimony, and plaintiff would be at a hopeless disadvantage in attempting to prove that the hindsight calculations, made years after the actual settlement, were not what actually was considered in arriving at a settlement figure."
Article 2164 of the Code of Civil Procedure provides that the appellate court shall render any judgment which is just, legal, and proper upon the record on appeal. We find that affirming the judgment of the trial court under the facts and circumstances of this case would be just, legal, and proper upon the record. Considering the lapse of time involved herein, remand would be a vain and useless thing. Cf. Hidalgo v. Dupuy, La.App., 122 So.2d 639; McKinney v. Levy, La.App., 212 So. 2d 279; McKay v. Vesley, La.App., 163 So.2d 121.
For the reasons assigned, the judgment of the Court of Appeal, First Circuit, is reversed and set aside; the judgment of the trial court is affirmed and made the judgment of this Court. All costs of this Court to be paid by relator Acy Lee Chambers.
SANDERS, J., concurs and assigns written reasons.
SUMMERS, J., concurs.
DIXON, J., concurs with written reasons.
BARHAM, J., dissents with written reasons.
TATE, J., dissents and will assign written reasons.
SANDERS, Justice (concurring).
As I construe the majority opinion, it holds that a husband's cause of action for damages in tort arising while he and his wife are living together in community is community property. Since the cause of action is community property, the money received in settlement of the cause of action is likewise a community asset.
I take the position that a cause of action is property. LSA-C.C. Art. 460; Heyse v. Fidelity & Casualty Co. of New York, 255 La. 127, 229 So.2d 724 (1969); Yiannopoulos, Civil Law of Property, § 13, pp. 33-36 (1966).
Being property, a husband's cause of action for damages must be classified upon the termination of the community as either community property or the separate property of the husband. Under Articles 2334[1] and 2402[2] of the Louisiana Civil Code, a *905 husband's cause of action for damages in tort arising while he and his wife are living together is clearly community.
Since the codal articles classify the cause of action as community, the courts must apply the classification until it is changed by the Legislature. See Pascal, Matrimonial Regimes, 27 La.L.Rev. 455, 456-457.
For the reasons assigned, I respectfully concur in the decree.
DIXON, Justice (concurring).
I concur in the opinion of the majority, with this exception: I cannot agree that "Constance is not entitled to participate in that portion of the settlement funds that compensate Acy for damages accruing after the dissolution of the community regime." What Constance owned was her community interest in the cause of action. The cause of action was the property acquired during the marriage. The value of the cause of action is affected by Acy's future losses, but that does not diminish Constance's one-half community interest in the cause of action.
TATE, Justice (dissenting).
I respectfully dissent.
The issue of state law before the court is clear-cut.[1] A husband was crippled during a marriage as a result of a 1966 accident. In 1967, he divorced his wife as an adulteress, he receiving custody of the children of the marriage. After the divorce, his claim for personal injuries was settled in 1967. Of this amount, almost all of $211,000 was obviously for loss of future earnings, future medical expenses, and future pain and sufferinglosses which will be sustained by the husband after the community was terminated by the 1967 divorce.
Nevertheless, the wife insists she is entitled to share fifty-fifty in this entire award, including for the damages recoverable by the husband for loss and injury sustained post-divorce.
Her reasoning is respectable, if inequitable: Under Civil Code Article 2402, as interpreted, damages recovered by the husband during the marriage fall into the community. Under Article 2334, a husband's action for damages is his separate property only if the accident occurred when he was living apart from his wife by reason of fault on her part.
The trial court agreed with her contentions. It held her entitled to one-half of the net monies received in the post-divorce settlement, whether or not they were for damages sustained before or after the dissolution of the community.
The court of appeal reversed. 238 So.2d 30 (1970). The court held that the wife was entitled to share only in the damages that may have accrued during the existence of the community; she was held not entitled to share in the damages that compensate the husband for damages accruing after the community was dissolved. 238 So.2d 34-35.
This incidentally, is the same result reached by every other Louisiana appellate court which has considered the question. Alfred v. Alfred, La.App., 237 So.2d 94 (1970) (certiorari granted, 256 La. 847, 239 So.2d 356; but the claim was compromised before heard by this court); Talley v. Employers Mutual Liab. Co., 181 So.2d 784 (1966), certiorari denied, 248 La. 785, 181 So.2d 783 (1966). The *906 Talley result did receive scholarly criticism. 27 La.L.Rev. 456 (1967).
We granted certiorari in this and in the Alfred case primarily to consider the legal question and to make a definitive decision of the legal principle at issue: When a cause of action for the husband's personal injuries arises during a marriage, is a wife entitled to share in monies paid a husband, after dissolution of the community, for damages attributable to loss sustained by him individually after the community's dissolution? (There is of course, little question as to her right under state law to share in damages attributable to loss prior to the divorce; those damages fall into the community by virtue of Civil Code Articles 2334, 2402.)
The majority opinion seems to resolve this issue as follows: "We agree with the Court of Appeal that Constance [the wife] is not entitled to participate in that portion of the settlement funds that compensate Acy [the husband] for damages accruing after the dissolution of the community regime."
The writer agrees with this resolution. There are, in my opinion, sound reasons for this result:
Civil Code Articles 2334, 2402, as interpreted, provide only that a cause of action for damages falls into the community, if arising during its existence, and that damages for the husband's personal injuries collected during the marriage are community funds.
The articles indeed afford persuasive support for the wife's argument that damages collected after the divorce will still belong to the community, even if for damages sustained after the community's dissolution. They do not, however, provide a legislative command to such effect.
The question is thus open to judicial interpretation, as a matter not expressly regulated by statute. "In all civil matters, where there is no express law, the judge is bound to proceed and decide according to equity. * * *" Civil Code Article 21. The principle here desired by the wife results from deduction and not from positive law to such effect; it need not, therefore, be accepted by the court, if demonstrated to be unwise or unfair. Geny, Method of Interpretation and Sources of Private Positive Law (LSLI translation, 1963), passim (e. g., Sections 101, 106, 107); 22 La.L.Rev. 727 at 732-34, 738-39 (1962).
By analogy, here applicable is the equitable principle recognized by our Civil Code that "no one ought to enrich himself at the expense of another". Article 1965.
It offends common sense and equity and almost every conceivable practical reason to allow this adulterous wife to obtain one-half of the sums awarded for the husband's post-divorce earnings, medical expenses, and suffering. During the remainder of his life, this crippled husband will have to live on only one-half of the sum awarded for his loss of earnings during those post-divorce years, and he will have only one-half of the money attributable to the full medical expenses incurred during the remainder of his life. He will also have to support the children of the marriage, whose custody he received due to her misconduct.
His adulterous wife will retain one-half of the sum awarded for her husband's post-divorce earnings, although (being at fault) she is not entitled to any alimony (support) andeven if free from fault could in no case be awarded more than one-third of his earnings, Civil Code Article 160. These future earnings are diverted to her away from the crippled husband and the minor children of the marriage.
So diverted also is one-half of the sums paid the husband for future medical expenses, even though the divorced wife is under no duty to contribute to payment of *907 them. As also with the payment to the husband's post-divorce suffering, such an award to the wife is without logic or social reason to commend it, as the majority properly realizes in its pronouncement of law quoted above.
The writer dissents because the majority, after announcing the correct principle, then reaches the opposite result by affirming the trial court!
The majority apparently bases this result on several legally immaterial factors: The long delay since settlement, the husband's alleging his right in the sum only alternatively under state law, and the difficulty of proving the pre-divorce and post-divorce factors.
I cannot subscribe to such result or such reasoning. The husband is entitled to have us apply to the present facts the legal principle found governing by the majority opinion. The difficulty of proof is no reason at all to deny his recovery without affording him a day in courtand, I might add, experienced tort lawyers in day to day disposition of personal injury claims can reach general agreement of the approximate worth of unliquidated and intangible and future damages, as do trial and appellate courts in countless decisions each year and over the years.
I respectfully dissent.
BARHAM, J., concurring in this dissent.

On Application for Rehearing
PER CURIAM.
We have held that: "a husband's cause of action for damages resulting from a tort committed against him while living with his wife in community is community property. It follows that the damages received by judgment of court or the funds received in settlement of a compromise of such cause of action are also community property." We reinstated the judgment of the trial court, which had ordered the payment to the wife of the fund in dispute. By this the majority intended to hold that the time the husband's cause of action arises determines the community or separate nature of the cause of action and the community or separate nature of the funds obtained when the suits on the cause of action were settled.
SUMMERS, J., dissents and assigns reasons.
BARHAM, J., dissents and assigns reasons.
TATE, J., dissents: From the observations of the distinguished author of the majority opinion, I do not believe that the "Per Curiam" denying this rehearing represents the view of a majority of this court. For this reason, as well as those set down in my original dissent, I respectfully enter this additional dissent from this "Per Curiam".
BARHAM, Justice (dissenting from refusal to grant rehearing and from filing of Per Curiam).
The per curiam filed in response to this application for rehearing does not reflect the majority view of this court. The majority, with Mr. Justice Hamlin as the author of the opinion, clearly stated that future earnings, medical expenses, etc., should be the separate property of the husband. Two of us dissenting believed the majority erred in failing to remand to determine these items of damage so that a proper partition of the tort settlement could be obtained.
It is well to caution the courts that the per curiam here filed, when read with the majority and dissenting opinions, will clearly indicate the diversity of view of this court, and that the per curiam is not a majority view. A blind following of *908 the per curiam by trial and appellate courts will in my opinion lead to injustice and very likely to reversal by this court on certiorari. A weak majority has tried to consolidate a view which I do not believe will obtain in future cases. I respectfully dissent from the refusal to grant a rehearing. I strongly dissent from the per curiam which does not represent a majority view of this court.
SUMMERS, Justice (dissenting from the per curiam).
My view of this problem, simply stated, is that the time of the husband's injury determines whether the award for injury is community or separate property. However, the award for loss, such as future earnings or pain and suffering calculated to accrue after termination of the community relationship, should fall into the husband's separate estate.
The need to invoke the solution I propose would, of course, never arise so long as the community relationship continues. It would only have application in unusual situations like the one this case presents.
I respectfully dissent.
NOTES
[1] "Every common carrier by railroad while engaging in commerce between any of the several States or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and, if none, then of such employee's parents; and, if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment.

"Any employee of a carrier, any part of whose duties as such employee shall be the furtherance of interstate or foreign commerce; or shall, in any way directly or closely and substantially affect such commerce as above set forth shall, for the purposes of this chapter, be considered as being employed by such carrier in such commerce and shall be considered as entitled to the benefits of this chapter." 45 U.S.C.A., Sec. 51.
[2] In his petition Acy alleged:

"As a result of the foregoing, plaintiff * * * was caused to suffer severe and painful personal injuries to the bones, muscles, ligaments, tendons, nerves, blood vessels, and other structures of his neck, back, body and legs, including fractures of the pelvis and legs; injuries to the nervous system and psyche, and the aggravation and exacerbation of prior existing, nondisabling predispositions such as nervousness, and normal degenerative changes;
"As a further result of the foregoing, plaintiff has suffered severe physical pain and discomfort, keen mental anguish, and damage to his separate and community property; he has required extensive medical attention, and has incurred medical and drug expenses; he, individually and as head and master of the community, has lost substantial sums of money which he otherwise would have earned; these conditions may continue indefinitely or become worse or permanent, all of which are to his damage in the sum of $1,150,000.00."
[1] "The property of married persons is divided into separate and common property.

"Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly. * * *
"Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property.
"Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. * * *"
[2] "This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. But damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone; `provided where the injuries sustained by the wife result in her death, the right to recover damages shall be as now provided for by existing laws.'"
[1] I pretermit discussion of the threshold issue of federal law, although I am uncertain that the majority opinion has adequately disposed of the substantial arguments for its application. We primarily granted this writ to decide the described issue of state law.