340 So.2d 1309 (1976)
Aljane Domingue BROUSSARD
v.
Dudley BROUSSARD.
Nos. 57807, 57811.
Supreme Court of Louisiana.
December 13, 1976.
Rehearing Denied January 21, 1977.
*1310 Homer Ed Barousse, Jr., Edwards, Stefanski & Barousse, Crowley, for plaintiff-applicant in No. 57807 and for plaintiff-respondent in No. 57811.
Thomas Robert Shelton, Lafayette, for defendant-applicant in No. 57811 and for defendant-respondent in No. 57807.
DENNIS, Justice.
This case raises the question of whether a husband's recovery during marriage of personal injury damages resulting from a premarital accident is his separate property. Dudley Broussard asserted a claim under the Jones Act, 46 U.S.C. 688, for an injury he received on October 20, 1967. While the matter was pending he and Aljane Domingue were married on July 4, 1969. Mr. Broussard settled his claim for $51,000 on April 19, 1971, and on the same day he purchased from a bank two "Certificates of Deposit" issued in both their names for the sum of $22,500 each. The remainder of the settlement money was used to pay family bills.
About six months later, in order to obtain a higher rate of interest, Mr. and Mrs. Broussard cashed in the certificates of deposit and purchased from a savings and loan association two $20,000 savings certificates representing "200 shares" in the association in the names of Dudley L. Broussard and Aljane D. Broussard.
By judgment dated June 26, 1973, Mr. Broussard obtained a divorce from Mrs. Broussard. Subsequently, Mrs. Broussard instituted this action for partition of the community. A notary public appointed to inventory the assets of the community listed as community property the two savings certificates issued by the savings and loan association. Mr. Broussard objected to the inventory, claiming that the savings certificates belong to his separate estate.
The trial court ruled in Mr. Broussard's favor, relying upon Chambers v. Chambers, 259 La. 246, 249 So.2d 896, 907 (1971), which indicated that "the time the husband's cause of action arises determines the community or separate nature of the cause of action and the community or separate nature of the funds obtained when the suits on the cause of action were settled." Because Mr. Broussard's cause of action arose prior to his 1969 marriage, the court concluded that it was property brought into the marriage and that the settlement money was therefore separate in nature, citing Louisiana Code of Civil Procedure Article 426 and Louisiana Civil Code Article 2334. Aljane Broussard appealed to the Third Circuit Court of Appeal.
*1311 While the appeal was pending this Court overruled Chambers in West v. Ortego, 325 So.2d 242 (La.1975). The court of appeal remanded the instant case to the trial court for apportionment of damages under the principles of West. We granted writs to determine if a remand of this case is required.
In West a judicially separated wife claimed half of the workmen's compensation settlement received by her husband after dissolution of the community for an accident he suffered during the existence of the community. We held, however, that the workmen's compensation benefits were the husband's separate property to the extent they were paid to compensate him for post dissolution loss of earnings. This result was achieved with difficulty because the relevant provisions of the civil code can be read to imply a contrary solution.
Louisiana Civil Code Article 2334, in pertinent part, provides:
"The property of married persons is divided into separate and common property.
"Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.
"* * *
"Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property.
"Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. * * *"
Louisiana Civil Code Article 2402 provides:
"This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. But damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone; `provided where the injuries sustained by the wife result in her death, the right to recover damages shall be as now provided for by existing laws."
The West majority recognized that the negative implication of these codal provisions is that the proceeds from enforcement or settlement of a husband's action for damages resulting from an accident sustained during cohabitation with his wife are community property. Nevertheless, to avoid unfairly depriving the husband of funds destined to recompense for his diminished earning capacity from which he would suffer perhaps many years after dissolution of the community, and to prevent an unjust enrichment of the wife with gains having no relationship to her industry and labor or enhancement of the community, this Court concluded that the inference which may be drawn from the code articles should not govern. We reasoned that monies acquired after dissolution of the marriage from settlement of the cause of action might be viewed as "a species of thing different from a cause of action," which would consequently fall into the separate estate by virtue of the time of its receipt. 325 So.2d at 248. In the absence of express statutory language to the contrary, we chose to decide the case in accordance with the underlying principles upon which our community system is based, natural law and reason. See, West v. Ortego, id. at 248; La.C.C. art. 21.
In the instant case, because Broussard's settlement included compensation for loss of future earnings, the court of appeal *1312 reasoned that West requires allocation to the community of that portion of the funds representing compensation for his loss of earning capacity during the time he lived in matrimony with Aljane Broussard. The logic of this extension of the West holding cannot be denied, and perhaps should be considered in revision of the Civil Code justifiably recommended by scholars to correct the problems encountered in the West case and others perhaps created thereby. See, Pascal, Updating Louisiana's Community of Gains, 49 Tul.L.Rev. 555 (1975); Pascal, Work of Appellate Courts, 32 La.L.Rev. 219 (1972); Note, 36 La.L.Rev. 1029 (1976); Compare, W. Reppy, Jr. & W. DeFuniak, Community Property in the United States, 170 et seq. (1975); W. DeFuniak & M. Vaughn, Principles of Community Property, § 82 (2d ed. 1971).
The present litigation, however, does not call for judicial improvisation, as did the facts in West and Chambers, because here the code is not so silent nor the demands of equity so strong. Separate property is that which either party brings into the marriage, La.C.C. art. 2334, and it is not disputed that Broussard brought his Jones Act cause of action into the marriage. Louisiana Code of Civil Procedure Article 426 establishes that a cause of action is property, and the more traditional view seems to be that the enforcement or settlement of a cause does not change its character as separate or community property. See, W. DeFuniak & M. Vaughn, Principles of Community Property, at 199 and cases cited at fn. 25; See, Note, 36 La.L.Rev. at 1036, fn. 41. Of course, the majority opinion in West does suggest a departure from this concept, but only because it was found there to be at cross purposes with the underlying principles of the codal community system. Here the traditional view, the codal principles and the force of equity are in harmony. None of Broussard's personal injury settlement money can be said to constitute "the produce of the reciprocal industry and labor of both husband and wife," La.C.C. art. 2402, because at the time of the accident Mrs. Broussard had contributed nothing to the non-existent community and had no influence upon her future husband's projected earning capacity. Since the code classifies as separate property actions for damages resulting from injuries to a husband, living separate from his wife by reason of her fault, La.C.C. art. 2334, it seems clearly intended that an unmarried man would be entitled also to treat such an action for damages as his separate property.
Accordingly, the holding in West is inapposite here because it was founded upon equitable considerations which are pertinent only where there is either no express law or inferences to be drawn from it are in conflict with the fundamental principles of the community property system. An action for damages resulting from offenses and quasi offenses suffered by a single man is clearly his separate property. La.C.C.P. art. 426; La.C.C. art. 2334. This proposition presents no threat to or conflict with the values protected by the community property system. Consequently, there is no basis for casting the recovery of a person who is injured while unmarried into a later established community, because the dichotomy which West recognized between an action for damages and the recovery is rooted in exigencies which do not bear upon this case.
Mrs. Broussard contends, however, that regardless of the original character of the settlement money, when her husband purchased certificates of deposit and later savings certificates in both their names, he donated the money to the community. In essence, she claims that the purchase in their names was a constructive delivery to her of one-half the cash, sufficient to effect a donation of one-half ownership in the funds. Alternatively, she argues that the purchase should be construed as a donation, regardless of the failure to comply with the formalities of law, because it qualifies as such under our decision in Primeaux v. Libersat, 322 So.2d 147 (La. 1975). We cannot agree.
A donation inter vivos is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of *1313 the donee who accepts it. La.C.C. art. 1468. Louisiana Civil Code Articles 1536, 1538 and 1539 regulate the donation of incorporeals and movable property:
"Art. 1536. An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity."
"Art. 1538. A donation inter vivos, even of movable effects, will not be valid, unless an act be passed of the same, as is before prescribed.
"Such an act ought to contain a detailed estimate of the effects given."
"Art. 1539. The manual gift, that is, the giving of corporeal movable effects, accompanied by a real delivery, is not subject to any formality."
There was no actual delivery of the cash to Mrs. Broussard. The purchases of certificates in the names of both spouses, without an actual withdrawal and delivery of funds to Mrs. Broussard, did not effect a manual gift or a donation to her. Rather, the purchases were analogous to a deposit in a joint savings account, which in and of itself, will not transfer ownership of the funds. Succession of Dykes, 258 So.2d 606 (La.App. 1st Cir. 1972); Dawson v. Capital Bank & Trust Co. of Baton Rouge, 261 So.2d 727 (La.App. 1st Cir. 1972). See also, Basco v. Central Bank & Trust Co., 231 So.2d 425 (La.App. 3d Cir. 1970); Owens v. Owens, 259 So.2d 454 (La.App. 3d Cir. 1972). Furthermore, an account on deposit is an incorporeal right, La.C.C. arts. 460, 474, which may only be donated by a notarial act in compliance with Article 1536. Vercher v. Roy, 171 La. 524, 131 So. 658 (1930); Northcott v. Livingood, 10 So.2d 401 (La.App. 2d Cir. 1942); Basco v. Central Bank & Trust Co., supra; Owens v. Owens, supra.
We recently held in Primeaux v. Libersat, supra, that, under the Uniform Stock Transfer Act, La.R.S. 12:621-43, no notarial act under Civil Code Article 1536 was required in order to validate as a donation the father's furnishing of the consideration to a corporation for it to issue its stock to his son. We buttressed that opinion with a dictum discussion of French commentators who have noted that the French Civil Code Article 931 (the counterpart of our Article 1536) "requires the notarial form only if a special instrument is drafted to declare the donation." 3 M. Planiol, Treatise on the Civil Law (La.St.L. Inst. transl. 1959), No. 2533.
Planiol states that "it is often possible to make a donation, that means to cause someone to acquire a property value gratuitously, without drafting such a special instrument." 3 M. Planiol, Treatise on the Civil Law (La.St.L. Inst. transl. 1959), No. 2533. For example:
"In cases of purchase in the name of another person, the object of the donation is not the acquired property, but the cash paid for it. It is an equivalent of an indirect manual gift, relieving the nominal purchaser from the payment of the price. One could say that this is a payment made cum animo donandi." Planiol, No. 2545.
Mrs. Broussard's reliance upon the holding and dicta in Primeaux is misplaced for several reasons. Although past decisions have held that the Uniform Stock Transfer Act is applicable to savings and loan association stock, Succession of McGuire, 151 La. 514, 92 So. 40 (1922); Menard v. Muhs, 196 So.2d 536 (La.App. 4th Cir. 1967); LeBlanc v. Volker, 198 So. 398 (La.Orl.App.1940); this conclusion now appears doubtful because of the specific provisions governing transfers of shares or savings accounts enacted by Act No. 234 of 1970. See, La.R.S. 6:744. Furthermore, in Primeaux, we accepted as correct the trial court's determination that it was the father's donative intent to have the stock in the family-held corporations issued to the son as his separate property. Thus, even in a case where compliance with the stock transfer legislation may substitute for the codal formalities of a donation, the substantive requirements of a divestment and donative intent must be fulfilled in order to effect a valid donation. In this the French writers concur, as Planiol observes:

*1314 "All informal donation, no matter what type (manual gifts, indirect donations, disguised donations), are subject to the basic rules governing ordinary donations, especially with regard to capability, successory collation, reduction in case of interference with the reserved share, etc. They are merely exempted from the external formalities imposed on inter vivos donations. But because they appear under a different form, a party who wants to apply to them the rules governing donations must first establish the actual character of the transaction. Such proof can as a rule, be made by all types of evidence." Planiol, No. 2555.
We find no error in the trial court's view that the evidence does not disclose an intention by Mr. Broussard to make a donation to Mrs. Broussard. He testified at trial that his sole reason for placing the certificates of deposit and savings certificates in the names of both parties was so that the funds would be insured up to $40,000. He was informed by both depositaries that an individual's account would be federally insured up to $20,000, but that a joint deposit would be doubly protected. The certificates were purchased in the names of both spouses and Mr. Broussard did not divest himself of the right to withdraw the funds. Under these circumstances, we cannot infer an intent to donate from a transaction which did not comply with the codal requirements for a donation.
We agree with the trial court, however, that while the savings certificates belong to the separate estate of Mr. Broussard, any interest accrued on the accounts during the existence of the community is community property. La.C.C. art. 2402.
The decision of the court of appeal is reversed, and the judgment of the trial court is reinstated.