564 So.2d 808 (1990)
Rae Wood CASON, Plaintiff-Appellant,
v.
Delton H. CASON, Defendant-Appellee.
No. 89-143.
Court of Appeal of Louisiana, Third Circuit.
June 27, 1990.
Rehearing Denied August 8, 1990.
*809 Bethard & Davis, James G. Bethard, Coushatta, for plaintiff/appellant.
Watson, Murchison, Crews, Arthur & Corkern, R. Raymond Arthur, Natchitoches, for defendant/appellee.
Before DOMENGEAUX, C.J., and GUIDRY and KNOLL, JJ.
GUIDRY, Judge.
This case involves the partition of the former community of acquets and gains that existed between Rae Wood Cason (now Warren) and Delton H. Cason. The parties were able to agree on the status and disposition of all but three items of property: an account at Peoples Bank and Trust Company; a cash management account with Merrill Lynch, Pierce, Fenner and Smith, Inc.; and, five acres of land with a stipulated value of $10,000.00. The trial court found both accounts to be the separate property of Delton and awarded him the five acres of land as partial reimbursement for separate funds expended for the benefit of the community. Rae appeals.
On appeal Rae Wood Cason urges trial error as follows: (1) the trial court erred in finding the cash accounts to be her former husband's separate property; (2) the trial court erred in its disposition of the five acres of land; and, (3) the trial court erred in excluding evidence concerning services rendered the community by Rae during Delton's recovery from a serious accident.
Delton Cason answered the appeal urging that the trial court erred in not declaring former La.C.C. art. 2334 unconstitutional and in not granting judgment in his favor against his former wife for $126,094.10, one-half the amount of the alleged separate funds he claims were spent for the benefit of the community.
Although we ultimately reach a different result, we note that the trial judge succinctly set forth the facts of this case and correctly stated the law applicable to those facts in his reasons for judgment. We adopt the following portion of the trial judge's reasons for judgment:
"This matter is before the court on a petition by Gladys Cason Warren, whereby she seeks to have a partition of the community of acquets and gains which formerly existed between herself and the defendant herein, Delton H. Cason. All of the community property issues have been resolved with the exception of one. The only remaining issue before the court relates to a sum of money which was derived in settlement of a personal injury sustained by Mr. Cason. It is the contention of Mrs. Cason, that the injury occurred during the marriage, and prior to the amendment of Civil Code Articles 2334[1] and 2402[2], therefore *810 the funds derived from the personal injury to her husband fall into the community. It is the contention of Mr. Cason that former Article 2334 is either not applicable or was an unconstitutional gender-based statute, and that as a result thereof, the funds derived from the settlement should be his separate property.
The chronology of the facts pertinent to this litigation are as follows:
1. May 30, 1969: Mr. and Mrs. Cason married and established their matrimonial domicile in Natchitoches Parish, Louisiana.
2. December 31, 1977: Mr. Cason fell 125 feet from an oil rig into the Gulf of Mexico sustaining serious injury.
3. May 30, 1979: Mr. Cason filed suit for damages as a result of his personal injury.
4. January 1, 1980: Effective date of the amendment of Louisiana Civil Code Article 2344[3] declaring that personal injuries to either the husband or wife became the separate property of that particular spouse.
5. December 14, 1982: Mr. Cason received the funds derived from his personal injury litigation.
6. June 24, 1986: Filing date of the petition for separation from bed and board between these parties which ultimately resulted in the termination of the community of acquets and gains.

. . . . .
As the chronology of events set forth above clearly manifests, the funds were received some three and one half years prior to dissolution. Mr. Cason received a net recovery of $333,405.82 of which $94,000.00 remains at this time.
In well written briefs counsel for both parties have cited and discussed West v. Ortego, 325 So2d 242 (La.1975); Placide v. Placide, 408 So2d 330 (La.App. 3rd Cir. 1981); Mead v. Mead, 442 So2d 870 (La. App. 3rd Cir.1983) along with other Louisiana jurisprudence dealing with prior Civil Code Articles 2334 and 2402 and present Civil Code Article 2344. They have likewise discussed the applicable law review articles. Mead, West and Placide all dealt with similar factual situations where (A) a husband was injured during the existence of the community and (B) a personal injury settlement was received after dissolution of that community. In all three cases the courts skirted the U.S. Constitutional issues and reached sound, common sense results by acknowledging that these awards for personal injuries are primarily to compensate for the loss of future earning ability and then equitably apportioning the award between the pre-dissolution and post-dissolution periods. The case which established the rule of pre-dissolution and post-dissolution equitable apportionment was West v. Ortego, supra. West specifically overruled Chambers v. Chambers, [259 La. 246], 249 So2d 896 (Sup.Ct.1971) *811 which Mrs. Warren has urged upon the court as controlling. Justice Calogero, writing for the majority [in West] expressed the thinking of that majority in the following language:
'Recovery for injury, whether it be by judgment or settlement, or whether it be for an offense, quasi-offense or a work-related accident, frequently involves an element of damages to compensate for future losses. Our judicial system normally demands that an injured party assert all claims for damages at one time, and damages for future losses are estimated and awarded in advance. This procedural requirement does not negate the fact that the injury for which a party is being compensated frequently occasions losses of earnings, medical expenses, and pain and suffering to be suffered on daily, weekly, monthly and/or annual bases. While a husband and wife are living together and the community is still in existence, it is reasonable to designate these damages as community property. However, when the community has been terminated, it is both unreasonable and inequitable to deprive the husband of funds which are to sustain him into the future, or compensate him for future pain, suffering and disability merely because the law has required assertion of all such damages as part of a single claim.' West v. Ortego, supra at 246.
Following the above language was a discussion of the prior jurisprudence including Chambers v. Chambers, supra; Talley v. Employers Mutual Liability Insurance Co., 181 So2d 784 (4th Circ.1965) and Alfred v. Alfred, 237 So2d 94 (3rd Circ. 1970). Writs were denied in Talley and granted in Alfred but Alfred was apparently settled before argument in the Supreme Court. The court then expressed its reasons and ruling as follows:
'... We do not believe that the Legislatures of the State of Louisiana which enacted Articles 2334 and 2402, and their amendments, foresaw or intended the effect of those articles here urged.
'Furthermore, nowhere in the articles is it plainly stated or clearly implied that damages received by a husband after termination of the community, to compensate for future wage and other losses, should fall into a dissolved community. In our view such an expression or clear implication, by inference or otherwise, cannot be gleaned from the fourth paragraph of Art. 2334, which while directing that certain actions for damages resulting from offenses and quasi-offenses suffered by the husband are the husband's separate property, with the inference that other actions are community, does not address itself to monies acquired after termination of the marital community, nor to the hiatus in the law with which we are here concerned.' * * *
'Applying the foregoing principles, we conclude that where a husband's settlement monies, acquired after dissolution of the community, but based upon a pre-dissolution accident-related cause of action, compensate for both pre-dissolution and post-dissolution losses, that portion of the settlement which compensates for post-dissolution losses falls into the separate estate of the husband.' West v. Ortego, supra at 248 and 249.
The court was far from unanimous in West. Justice Summers concurred in the majority opinion but only because he characterized the Worker's Compensation benefits as substitute `earnings' as opposed to `damages'. Justices Dison [sic] and Marcus dissented outright based on their reasoning that "A cause of action is property. Its date of acquisition can be determined. There is no legislative exceptions which would permit its division into part community and part separate property.' (quote from dissent of Justice Dixon)....
Judge Laborde, citing West and Placide, when writing for the Third Circuit ... in Mead [concluded] as follows:
'Since the injury giving rise to these proceeds occurred prior to this enactment, plaintiff contends that the former LSA-C.C. Articles 2334 and 2402 govern the proceeds, thereby making the settlement proceeds community property. We disagree. Even considering the issue in *812 light of the former articles we find as the Supreme Court did in West, supra, that when a settlement is made after dissolution arising from a pre-dissolution injury, an accounting is due to the wife for only that portion of the settlement attributable to the time when the community existed. That portion attributable to the post-marital period is the separate property of the husband.' Mead v. Mead, 442 So2d 870 at 873, Writ Denied, 445 So2d 452. West v. Ortego, supra; Placide v. Placide, 408 So2d 330 (La.App. 3rd Cir. 1981).'
Although the Third Circuit in Mead specifically, on the basis of cited authority, avoided the constitutional issue (see note 5 at page 874 of Mead, supra) it nevertheless refused again to give effect to LSA-C.C. Arts. 2334 and 2402 (on the basis of West) although they were clearly the law of this state at the time of Mr. Mead's injury on December 7, 1979. The decision in Mead, although drawing authority from West v. Ortego, Supra was clearly not in conflict with Orr v. Orr, [440 U.S. 268], 99 S.Ct. 1102 [59 L.Ed.2d 306] (1979) and therefore avoided attack on U.S. Constitutional grounds.
Orr had stricken down a gender-based alimony provision in Alabama law, having found it violative of the Equal Protection Clause of the Fourteenth Amendment....

. . . . .
In the case at bar, just as in Mead, the husband was injured prior to the 1980 amendment and the dissolution occurred afterward. The only factual differences are that he received his settlement money prior to the dissolution and now seeks a declaration that the portion remaining is his separate property and reimbursement from the community for that portion used by the community. This court will likewise not confront the Constitutional issue but will follow the lead of the Louisiana Supreme Court in West and the Third Circuit in Placide and Mead."
The trial court went on to conclude:
"In the instant case Mr. Cason received $333,000.00 and spent it all for the benefit of the community with the exception of a $35,000.00 tithe to his church and $94,000.00 which still remains. Therefore the community has benefitted [sic] in the amount of $204,000.00. Some of the $333,000.00 would be legal interest on the judgment, replacement of lost income between the time of injury and the time of dissolution and therefore community, but the balance, the bulk of the settlement, would be to compensate Mr. Cason for his lost or diminished future earning capacity and therefore his separate property. Mrs. Cason, now Mrs. Warren, is an educated, young, healthy woman with responsible employment who has remarried and made a new life for herself. Mr. Cason is crippled for life and will always feel the pinch of his lost or, at best, reduced earning capacity. Since the community has already received almost two thirds of the settlement it is proper to declare the $94,000.00 remaining to be the separate property of Mr. Cason."
The court further found that some reimbursement was due Delton and awarded him the five acres of remaining community land as satisfaction of this claim.
We find clear error in the trial court's determination that: (1) the community portion of the settlement received by Delton was insignificant; and, (2) its conclusion that there was either no comingling or insignificant comingling of separate and community funds.
Under the holdings in West, Placide, Mead, and then effective codal provisions, a significant portion of the award to Delton for his personal injuries constituted community funds, i.e., the interest received on the award; that portion of the award attributable to expenses incurred by the community as a result of the injuries; and, that portion of the damages attributable to the loss of earnings of the injured spouse during the existence of the community.
Delton Cason received $333,405.82 on December 14, 1982, $4,637.96 on December 17, 1982, and $43,981.29 on July 11, 1984, in connection with his personal injury suit. Evidence introduced at the July 1981 personal injury trial established that Delton's loss of earnings from the *813 date of his accident to the date of trial was $61,048.97.[4] Delton's award also included a sum to compensate for future loss of earnings. In addition, the interest on the amount awarded approximated $96,589.62. The Casons' community regime was not terminated until June 24, 1986. The interest earned on the settlement monies from the date they were received until June 24, 1986, was also community property. Likewise, that portion of the judgment which represented Delton's lost wages from the time of trial, July 1981, to June 24, 1986, was also community property.
It is obvious that a significant portion of the personal injury award to Delton Cason was composed of community funds. After receipt of the monies, Delton made no effort to segregate these funds. Rather, the funds were comingled and remained so from date of receipt until termination of the community. Delton testified that in spending these funds, no effort was made to separate purchases and/or payments into those made with community funds and those made with separate funds.
It is well settled that any property acquired during the existence of a community regime is presumed to be community property and that the burden of overcoming this presumption rests upon the party asserting the separate nature of the property. La.C.C. art. 2340; Lambert v. Lambert, 480 So.2d 784 (La.App. 3rd Cir.1985); Smith v. Smith, 311 So.2d 514 (La.App. 3rd Cir.), writ denied, 313 So.2d 840 (La.1975). Furthermore, as this writer, as organ of the court, noted in Succession of McVay v. McVay, 476 So.2d 1070 (La.App. 3rd Cir. 1985):
"In Gregory v. Gregory, 223 So.2d 238 (La.App. 3rd Cir.1969), this court observed that:
'When separate funds are mixed or co-mingled with community funds to the extent that the separate funds are no longer capable of identification, and it is impossible to establish what part of the funds belongs either to the separate estate or to the community, then all of said funds are regarded as belonging to the community. If only a relatively small amount of community funds are co-mingled with separate funds, then the mixing of such funds will be considered as inconsequential, not sufficient to constitute a co-mingling, and it will not warrant the designation of all such funds as community property. Succession of Sonnier, 208 So.2d 562 (La.App.3d Cir. 1968); Magnolia Petroleum Co. v. Crigler, 12 So.2d 511 (La.App.2d Cir.1942); Smith v. Brock, 200 So. 342 (La.App.2d Cir.1940); Succession of Land, 212 La. 103, 31 So.2d 609 (1947); Odom v. Odom, 121 So.2d 8 (La.App.2d Cir.1960); Abraham v. Abraham, 230 La. 78, 87 So.2d 735 (1956); Giamanco v. Giamanco, [131 So.2d 159 (La.App.3d Cir.1961) ] supra.'"
We find that the trial judge erred in finding that there was no comingling of community and separate funds such that the separate funds are no longer susceptible of identification. In Succession of Norwood v. Norwood, 519 So.2d 338 (La.App. 2d Cir.), writ denied, 521 So.2d 1169 (La. 1988), our brethren of the Second Circuit set forth the following well settled principle of law:
"Things in the possession of a spouse during the existence of the marriage are presumed to be community, but either spouse may prove that they are separate property. LSA-C.C. Art. 2340. The party alleging the separate character of property must prove that the property was acquired and paid for with separate funds by proof that is fixed, clear, positive and legally certain. Succession of Lyons, 452 So.2d 1161 (La.1984); Emerson v. Emerson, 322 So.2d 347 (La.App. 2d Cir.1975); Lenard v. Lenard, 386 So.2d 1043 (La.App. 4th Cir.1980)."
Delton offered no "fixed, clear, positive and legally certain" proof that any specific account established after the settlement funds were received was made up exclusively *814 of his separate money. All monies received were treated the same during the three and one-half years the community continued to exist after their receipt. Unlike West, Placide and Mead, supra, where settlement funds were received after the termination of the community and thus there was no question of comingling, we are faced with a situation where, for three and one-half years, all funds were treated indiscriminately. Funds were transferred between accounts and expended without regard to their status as separate or community. While we recognize that under the rule of West, supra, some of the funds received were to compensate for post-dissolution damages and thus separate property, we are unable to determine how much, if any, of those funds remain. Therefore, we find that, because of extensive comingling, all settlement funds which remain must be regarded as belonging to the community.
Our conclusion aforestated renders moot the other issues raised on appeal.
Accordingly, for the reasons stated, we reverse the judgment of the trial court. We conclude that the remaining funds in account number XXX-XXX-X in Peoples Bank and Trust Company and cash management account number XXX-XXXXX with Merrill Lynch, Pierce, Fenner and Smith, Inc. are the community property of Delton H. Cason and Rae Wood Cason (Warren) and are divisible accordingly. We affirm the award by the trial court of the four tracts of land described as Tracts A, B, C and D in the judgment of September 22, 1988, to Delton H. Cason but upon the payment of $5,000.00 to Rae Wood Cason Warren. All costs of this appeal are taxed against appellee, Delton H. Cason.
REVERSED AND RENDERED.
NOTES
[1] The property of married persons is divided into separate and common property.

Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.
The earning of the wife when living separate and apart from her husband although not separated by judgment of court, her earnings when carrying on a business, trade, occupation or industry separate from her husband, actions for damages resulting from offense and quasi offenses and the property purchased with all funds thus derived, are her separate property.
Actions for damages resulting from offenses and quasi offenses suffered by the husband, living separate and apart from his wife, by reason of fault on her part, sufficient for separation or divorce shall be his separate property.
Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. But when the title to community property stands in the name of the wife, it cannot be mortgaged or sold by the husband without her written authority or consent. La.C.C. art. 2334, repealed January 1, 1980.
[2] This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. But damages resulting from personal injuries to the wife shall not form part of this community, but shall always be and remain the separate property of the wife and recoverable by herself alone; "provided where the injuries sustained by the wife result in her death, the right to recover damages shall be as now provided for by existing laws".

La.C.C. art. 2402, repealed January 1, 1980.
[3] Damages due to personal injuries sustained during the existence of the community by a spouse are separate property.

Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. If the community regime is terminated otherwise than by the death of the injured spouse, the portion of the damages attributable to the loss of earnings that would have accrued after termination of the community regime is the separate property of the injured spouse.
La.C.C. art. 2344, effective January 1, 1980.
[4] See Cason v. Diamond M. Drilling Company, 436 So.2d 1245 (La.App. 1st Cir.1983), at 1250 and 1251, writ denied, 441 So.2d 1221 (La.1983).