549 So.2d 437 (1989)
Sandra Touchet YOUNG, Plaintiff-Appellee,
v.
Phillip Mark YOUNG, Defendant-Appellant.
No. 88-280.
Court of Appeal of Louisiana, Third Circuit.
September 19, 1989.
*438 Haik & Minvielle, Julius Grubbs, New Iberia, for plaintiff-appellee.
Suzanne E. Lafleur, David Groner, New Iberia, for defendant-appellant.
Before STOKER, YELVERTON and KNOLL, JJ.
KNOLL, Judge.
The issue before us is whether the proceeds from three separate personal injury settlements to the husband, Phillip Mark Young, were his separate property. Phillip had three accidents. The first accident occurred four months before Phillip married Sandra Touchet Young. The other two accidents occurred during the marriage.
The trial court ruled that: (1) at least 50% of the March 18, 1980, settlement (first accident) was attributed to loss of community earnings; (2) Phillip indiscriminately commingled the balance of the settlement, therefore, he was not due reimbursement; and, (3) the McSween lot was community property. From this judgment Phillip appeals.

FACTS
Phillip and Sandra were married on April 28, 1978. Four months before they were married, Phillip sustained a work-related injury that rendered him permanently disabled. He received a settlement for this injury on March 18, 1980, in the sum of $155,602.37. On that date, Phillip purchased a $120,000 certificate of deposit and deposited the balance of $35,602.37 into a joint checking account at Guaranty Bank and Trust Company in Lafayette, Louisiana. Both transactions bore the name "M/M Phillip M. Young."
The following day, March 19, 1980, Phillip purchased a lot from James Nelson (Nelson Lot 11)[1] for $9,800. A money order *439 for that amount was purchased from Guaranty Bank by check drawn on the joint checking account. Subsequently, on July 15, 1980, Phillip purchased a lot from James Nelson and Burt Willis (the Nelson/Willis lot) for $10,173.65, using money from the joint checking account.
On June 16, 1980, Phillip issued a check to Sam Broussard for $2,225.73 as the down payment for a tractor. The balance of $3,000 was paid on June 26, 1980. Both checks were drawn on the Guaranty Bank account.
Thereafter, Phillip obtained $64,000 from the $120,000 certificate of deposit to purchase a house on Indest Street in New Iberia, Louisiana.[2] The $64,000 was deposited into the joint checking account at Guaranty Bank on April 21, 1981, and on April 27, 1981, a check for that amount was drawn on the joint checking account to cover the purchase price of the house.
In January 1985, Phillip received $111,995.97 for a neck injury he sustained in an automobile accident. On January 14, 1985, Phillip opened a checking account in his and Sandra's name, at State National Bank in New Iberia, depositing the entire amount of his settlement into that account. On July 25, 1985, Phillip purchased a lot from Harold McSween (the McSween lot)[3] for $33,000. By check dated April 15, 1985, Phillip made a $3,000 deposit, and by check dated July 25, 1985, he paid the balance of $30,000.
Phillip was also injured during a fight and received the gross amount of $14,385 on February 14, 1984. Phillip's net receipt after attorney's fees and costs were deducted was $8,220.98. The proceeds from this injury are not at issue.
On April 10, 1986, the parties were granted a judicial separation. Sandra filed a petition to partition the community property and both parties filed a motion and order to traverse the detailed descriptive list. Subsequently, Phillip filed an amended detailed descriptive list, seeking reimbursement from the community for separate funds used in purchasing community assets.
During the marriage Sandra earned between $800-$1000 per month after taxes. The couple lived off Sandra's earnings and his social security disability benefits.

PROCEEDS FROM PREMARITAL INJURY
Phillip contends the trial court erred in finding that at least 50% of the March 18, 1980, personal injury settlement is attributable to loss of community earnings and thus, community property. We agree.
Separate property is defined in our Civil Code in article 2341:
"The separate property of a spouse is his exclusively. It comprises: property acquired by a spouse prior to the establishment of a community property regime; property acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used; property acquired by a spouse by inheritance or donation to him individually; damages awarded to a spouse in an action for breach of contract against the other spouse or for the loss sustained as a result of fraud or bad faith in the management of community property by the other spouse; damages or other indemnity awarded to a spouse in connection with the management of his separate property; and things acquired by a spouse as a result of a voluntary *440 partition of the community during the existence of a community property regime."
There is no dispute that Phillip's first accident occurred four months before his marriage to Sandra. It is well settled that where an injury has occurred for which the injured party has a cause of action, such cause of action is a vested property right. Pillow v. Board of Comrs, 425 So.2d 1267 (La.App. 2nd Cir.1982), writ granted, 427 So.2d 1200 (La.1983), writ recalled and denied, 445 So.2d 1225 (La.1984).
Article 2344 of our Civil Code provides when damages are considered part of the community:
"Damages due to personal injuries sustained during the existence of the community by a spouse are separate property.
Nevertheless, the portion of the damages attributable to expenses incurred by the community as a result of the injury, or in compensation of the loss of community earnings, is community property. If the community regime is terminated otherwise than by the death of the injured spouse, the portion of the damages attributable to the loss of earnings that would have accrued after termination of the community property regime is the separate property of the injured spouse." (Emphasis added.)
Article 2344 is not applicable to damages incurred before marriage, but paid during the existence of the community.
In Broussard v. Broussard, 340 So.2d 1309 (La.1976), a case very similar to the present one, our Supreme Court held that a husband's recovery, during marriage, of personal injury damages, which resulted from a premarital accident, was the husband's separate property, though a portion of the funds recovered included compensation for loss of future earnings. The court reasoned: "None of Broussard's personal injury settlement money can be said to constitute `the produce of the reciprocal industry and labor of both husband and wife,' La.C.C. art. 2402, because at the time of the accident Mrs. Broussard had contributed nothing to the non-existent community and had no influence upon her future husband's projected earning capacity."
In the present case, Phillip was injured in a work-related accident on December 28, 1977, four months prior to marrying Sandra. An action for damages resulting from offenses and quasi-offenses suffered by a single man is clearly his separate property. The enforcement or settlement of a cause of action does not change its character as separate or community. None of Phillip's personal injury settlement can be said to constitute "the produce of the reciprocal industry and labor of both husband and wife," because at the time of the accident, Sandra contributed nothing to the non-existent community and had no influence upon her future husband's projected earning capacity.
The trial court erred in following Mead v. Mead, 442 So.2d 870 (La.App. 3rd Cir.1983), writ denied, 445 So.2d 452 (La.1984), and its progenies. In Mead, a settlement was made after dissolution of the marriage for a pre-dissolution injury. The court held that an accounting was due to the wife for only that portion of the settlement attributable to the time when the community existed. In the case sub judice, Phillip's injury occurred prior to the establishment of the community regime with Sandra. Accordingly, the trial court fell into error in finding fifty percent of Phillip's personal injury settlement attributable to a loss of community earnings. Therefore, we reverse this holding and find the settlement proceeds of $155,602.37, Phillip's separate property though a portion of the settlement was for future loss of earnings.

COMMINGLING SEPARATE & COMMUNITY PROPERTY
Phillip contends the trial court erred in finding he indiscriminately commingled the March 13, 1980, settlement proceeds with community funds, such that the separate funds could not be differentiated from the community, thus Phillip was not entitled to reimbursement from the community for items purchased with those proceeds.
*441 In addressing this issue we turn to Curtis v. Curtis, 403 So.2d 56 (La.1981), which held:
"We have stated in cases involving bank accounts that the mere mixing of separate funds and community funds in the same account does not of itself convert an entire account into community property; only when separate funds are commingled with community funds indiscriminately so that the separate funds cannot be identified or differentiated from the community funds are all the funds characterized as community funds. Where separate funds can be traced with sufficient certainty to establish the separate ownership of property paid for with those funds, the separate status of such property will be upheld." (Citations omitted.) (Emphasis added.)
The party alleging the separate character of property must prove that the property was acquired and paid for with separate funds by proof that is fixed, clear, positive and legally certain. Succession of Hamiter, 519 So.2d 341 (La.App. 2nd Cir.1988), writ denied, 521 So.2d 1170 (La.1988).
In the present case, the record shows that Phillip purchased a $120,000 certificate of deposit the same day he received his settlement. The record also clearly shows that he purchased the certificate of deposit with his settlement proceeds and deposited the balance in a joint checking account. Clearly the certificate of deposit constitutes Phillip's separate property. Although he purchased the certificate of deposit in both their names, it still remains his separate property because there was no actual withdrawal and delivery of funds to Sandra such as to constitute a manual gift or donation. Broussard v. Broussard, supra. Rather, the purchase was analogous to a deposit in a joint savings account, which in and of itself will not transfer ownership of the funds.
The trial court held that the funds used to purchase the Indest Street house, Nelson Lot 11, the McSween lot, and the tractor, were commingled with community funds to the extent that the separate funds were not traceable, thus Phillip was not entitled to reimbursement from the community.
The record shows that the Indest Street house was purchased for $64,000 with funds obtained from the $120,000 certificate of deposit. The funds were deposited into the Guaranty Bank account on April 22, 1981, and on April 27, 1981, a check was drawn to cover the purchase price of the house.
Phillip purchased Lot 11 from James Nelson on March 19, 1980, the day after he received his personal injury settlement of March 18, 1980. The purchase price was $9,800.
The tractor was purchased by check drawn on the joint account at Guaranty Bank. Phillip paid a deposit of $2,225.73 on June 16, 1980, and he paid the balance of $3,000 on June 26, 1980.
Phillip received $111,995.97 for a neck injury he sustained in an automobile accident during the marriage. This award is clearly his separate property since it was damages for pain and suffering. LSA-C.C. Art. 2344. The first premarital accident rendered Phillip permanently disabled from working. Phillip opened a checking account on January 14, 1985, at State National Bank and deposited $111,995.97. The account bore the name "Mr. or Mrs. Phillip M. Young". On July 25, 1985, Phillip purchased the McSween lot by paying the balance of $30,000. He had already left a $3,000 deposit with Mr. McSween.
When Phillip received his first settlement on March 18, 1980, Sandra was working at Joyce's Superette in St. Martinville as a meat wrapper. Her net salary was $800$1,000 per month after taxes. Sandra testified that she never had a job that paid her more than that amount. Phillip claims that when the McSween lot was purchased Sandra was no longer employed; Sandra maintains that she was working. We find that Sandra's income was far from sufficient to produce the lump sums used to make these major purchases. The record shows that it would have been virtually impossible for these community advantages to be gained without Phillip's separate funds. Ziegler v. *442 Ziegler, 537 So.2d 1207 (La.App. 4th Cir. 1989).
Moreover, Sandra testified at trial that she did not have funds with which to purchase the disputed property. During cross-examination Sandra stated:
"Q. So, you didn't have any money from which to buy $33,000.00 property of your own funds?
A. Not of my own funds, no.
Q. Nor did you have the property to buy the house at Indest Street at the time it was bought?
A. No, sir.
Q. Nor did you have the property to buy the tractor when it was bought, other than the funds that Philip [sic] had?
A. No, sir.
Q. Nor did you have the money to buy the property from Mr. Nelson, the two lots you bought from Mr. Nelson, did you?
A. No, sir."
Accordingly, we find the separate funds used for the Indest Street property, Nelson Lot # 11, the tractor, and the McSween property are clearly traceable. Community funds, if any, used to make these substantial purchases are inconsequential. Therefore, pursuant to LSA-C.C. Art. 2367 Phillip is entitled to reimbursement of one-half the value of the property at the time it was used.
On the other hand, Phillip testified that the $10,173.65 used to purchase the Nelson/Willis lot came from interest earned from the $120,000 certificate of deposit. LSA-C.C. Art. 2339 provides that the natural and civil fruits of the separate property of a spouse are community property. Accordingly, it is clear that this property is community property, and Phillip is not entitled to reimbursement for its purchase price.
For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed in part. We recast the judgment only as to that portion which we reverse, as follows:
IT IS ORDERED, ADJUDGED AND DECREED that the settlement proceeds received by Phillip Mark Young on March 18, 1980, in the sum of $155,602.37 constitute his separate property.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the certificate of deposit for $120,000 is Phillip Mark Young's separate property.
IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that Phillip Mark Young is due reimbursement from the community for the following items, representing one-half their value:
(1.) $32,000for the house and lot located on Indest Street in New Iberia, Louisiana;
(2.) $4,900for the Nelson Lot # 11;
(3.) $2,612.86for the tractor; and,
(4.) $16,500for the McSween property.
In all other respects the judgment of the trial court is affirmed. Costs of this appeal are assessed to Sandra Young.
REVERSED IN PART, AFFIRMED IN PART AND RENDERED.
NOTES
[1] Two lots were purchased by Phillip from James Nelson. The lots are referred to in the record as Nelson Lots 9 and 10. The money order used to purchase the $9,800 lot bears the notation "Paid in full lot no. 11". Accordingly, we refer to the $9,800 lot as Nelson Lot 11.
[2] From the evidence, we are unable to determine whether the $64,000 was obtained directly from the $120,000 certificate of deposit, or if Phillip borrowed the $64,000 against the certificate of deposit and repaid the loan when the certificate matured. Although the characterization of the transaction would normally be crucial, in the present case it is of no moment. Under cross-examination, Sandra admitted that the $64,000 came from the settlement proceeds.

A judicial confession is a party's explicit admission of an adverse factual element; its effect is to waive evidence as to the subject of the admission. Crawford v. Deshotels, 359 So.2d 118 (La. 1978).
[3] Other purchases were made with the $111,995.97 settlement, however those items are not before us and will not be discussed here.