654 So.2d 742 (1995)
Mary Ann Nini McMORRIS
v.
Tommie Edward McMORRIS, Sr.
No. CA 94 0590.
Court of Appeal of Louisiana, First Circuit.
April 10, 1995.
*744 Walton Barnes, Baton Rouge, for plaintiff-appellant, Mary Ann Nini McMorris.
Richard McShan, Greensburg, for defendant-appellee, Tommie Edward McMorris, Sr.
Before GONZALES and PARRO, JJ., and REDMANN[1], J. Pro Tem.
WILLIAM V. REDMANN, Judge Pro Tem.
An ex-wife appeals the judgment in her community partition suit, complaining primarily that it treats as community the funds she received during marriage in tort settlement and contract disability payments from a personal injury before marriage. Other complaints include that the judgment does not allot assets nor fix monetary amounts due between the ex-spouses.[2]
We reverse as to funds received by the wife on account of pre-marital personal injury; we also rule on some other aspects; and we remand with instructions for entry of a partition judgment in executable form in accordance with R.S. 9:2801.

Damages from pre-marital personal injury
A cause of action for damages due to personal injuries sustained prior to marriage is "property acquired by a spouse prior to the establishment of a community property regime," C.C. art. 2341, and therefore is separate property. It is not converted into community when settled by payment during marriage (not even in part, as by prorating for future lost earnings).[3]Broussard v. Broussard, 340 So.2d 1309 (La.1976); Young v. Young, 549 So.2d 437 (La.App. 3d Cir. 1989).[4]
The ex-husband also argues that the check's having been payable to both spouses shows that part of the settlement was for his loss of consortium (his automobile damage was separately paid).[5] But the ex-husband had no right of action for loss of consortium. Although he then lived with the victim and thus may have suffered a loss of consortium, he was her fiancé and not her husband at the time of the injury. C.C. art. 2315 allows consortium-loss damages only to "persons who would have had a cause of action for wrongful death of an injured person," and C.C. art. 2315.2 limits wrongful death actions to sue on that cause of action exclusively to spouse and children, then parents, and then siblings. Leckelt v. Eunice Superette, Inc., 555 So.2d 11 (La.App. 3d Cir.1989), writ denied *745 559 So.2d 141 (La.1990).[6]

Contract payments during community for pre-marital disability
The ex-wife's monthly payments for her pre-marital disability became due before her marriage, under the terms of her pre-marital employment contract. Her right to those contractual payments was property, and was acquired by her when she became disabled by injury before her marriage, and was therefore her separate property (like her right to the tort damages). C.C. art. 2341.
The ex-husband contends that, on similar facts, Johnson v. Johnson, 532 So.2d 503 (La.App. 1st Cir.1988) (cited by the trial judge), concluded that disability benefits were community. We do not agree that the facts are similar, except that in both cases the disability benefits came from employment. The distinction is that the employment and all disability entitlements came after the marriage in Johnson, while here they came before the marriage.
Thus Mrs. McMorris's $39,684.93 total of monthly disability payments, as well as her $55,000 settlement (and by stipulation her $1,184.82 vacation pay), were her separate property.
A large part of the $55,000 is traceable, but the funds were not segregated, and the doctrine of commingling, as affected by the 1979 revision of the marital regimes law, is therefore addressed.

Commingling
Under the 1979 marital regimes law, with the husband no longer the exclusive manager of the community, there is little reason for differing treatments of the two spouses' separate funds.
C.C. art. 2341 makes separate (among other things) any property acquired before marriage, or "acquired by a spouse with separate things or with separate and community things when the value of the community things is inconsequential in comparison with the value of the separate things used."[7] Perhaps most important to accounting at dissolution, art. 2367 provides that separate property "used for the acquisition, use, improvement, or benefit of community property" is reimbursable as to half by the other spouse, although only to the extent of the other's half of the community net of community debts.[8]
Katherine S. Spaht and W. Lee Hargrave, Matrimonial Regimes (16 La. Civil Law Treatise), § 3.40, at 117-18 (1989) (hereafter, Spaht and Hargrave), analyze commingling, and its possible loss of effect on net result, under today's law:
A necessary implication of the text of Civil Code Article 2341 is that only a new thing acquired with other property or funds becomes community. Combinations of separate and community fungible items do not produce a new thing. [Citing La. Civ.Code arts. 507-516; Aubry & Rau, Droit Civil Français, Vol. II (7th ed. updated) in J. Mayda, 2 Civil Law Translations 265-266 (1966).] In such a case, the mixture may be presumed community, but if proof is made of the separate contribution, the separate estate of one spouse will remain owner of those things. [Citing Succession *746 of Sonnier, 208 So.2d 562 (La.App. 3d Cir.1968), inter alia.]
. . . .
It is arguable that separate and community funds put into one bank account do not produce a new thing; money is the ultimate fungible item. In such an analysis, the funds in the account are presumed community, but if it can be proved that separate funds were deposited and not withdrawn, those funds would remain separate. On the other hand, it might be argued that a new thing, an account, is produced and is all community. Even so, if it can be proved that separate funds were contributed, the separate estate of that spouse is entitled to reimbursement for the use of those separate funds. [C.C. art. 2367.] The sum involved would be the same under either analysis. Under the first analysis, the spouse whose separate funds were deposited still owns them. In the second case, that spouse has a personal claim against the other [sic] for that amount. In most cases, this would make no difference between the parties....[9]
Since the 1979 enactment of art. 2341, mixing of funds in the same account need not extinguish the separate character of either the husband's or the wife's separate funds; only indiscriminate commingling, so that one cannot identify or differentiate among the funds, results in the account being deemed community. Curtis v. Curtis, 403 So.2d 56 (La.1981). See also Kyson v. Kyson, 596 So.2d 1308 (La.App. 2d Cir.1991), writ denied 599 So.2d 314 (1992), holding commingling did not convert separate funds into community.[10]
Moreover, when a joint account is deemed community because of indiscriminate commingling, it is not inescapable that a spouse loses entitlement to recoup the value of funds invested into community assets or payment of community debts. See Young v. Young, 549 So.2d at 441, n. 8.

Tracing the separate funds
It seems reasonable that under art. 2341, and as pointed out by Curtis v. Curtis and by Spaht and Hargrave, separate and community funds could remain identifiable as such if left untouched in the same account; and, if the trial judge deems all the evidence properly supportive of such an inference, he might reasonably infer and conclude that the remaining balance in the joint account represents, in whole or part, a remainder of the ex-wife's monthly deposits of separate disability payments. Ultimately, this is a question for the careful analysis and disposition of the trial judge. Thus, where art. 2340's presumption of community is arguably questioned by the showing of a large initial deposit and then significant monthly deposits of the ex-wife's separate funds, there is room for the trial judge by careful analysis and application of the Code articles to reach appropriate fact-dependent results, notwithstanding *747 numerous withdrawals and deposits over the course of the brief marriage.[11]

Tracing: some notes on debts
The trial judge was clearly wrong in declaring that all debts were community obligations. Prior to the marriage, the ex-husband had incurred two mortgage debts on his home and truck, and we declare those and their replacement (by refinancing, notwithstanding that the then wife also signed the note) to be the ex-husband's separate debts. When the ex-wife provided the funds ($23,630.77 and $8,230.53) out of her $55,000 tort settlement to pay them, the ex-husband became indebted to the ex-wife's separate estate for 100% of those $31,861.30 advances.
The trial judge was also clearly wrong in not recognizing the ex-wife's separate property contributions to the acquisition of the community home. She contributed a motor home (the separateness of which seems to be undisputed, bought for $4,000 at the time she received the $55,000 settlement), which was accepted as worth $6,500 towards the price of the home (increasing the community's value by that amount, and the ex-husband's half by half that amount, for which she is entitled to reimbursement from him under C.C. art. 2367). Additionally, her funds provided the bulk, and the community an "inconsequential" part, C.C. art. 2341, if any, of the two $13,250 certificates of deposit cashed for $28,546.58, of which $20,470 was the "down payment" on the community home purchase. The certificates were bought four months after she expended the $35,861.30 just noted, out of her $55,000 settlement, leaving $19,138.70. She had previously deposited her $1,184.82 vacation pay plus the payoff of her pension plan (when she resigned from the employment she was disabled to continue). From July 1988 to January 1989 (the certificates were bought in December 1988), she deposited $7,018.77 of disability payments. Her funds were adequate to have provided the bulk if not all of the certificates' $26,500 cost as she testified. She was not disbelieved by the trier of fact, whose error was one of law only. She is entitled to recover half of the total of $26,970 from the ex-husband under art. 2367 (and will recoup the other half by the presumed increase in value of the community).[12]

Credit for rental value of family home
The ex-wife complains of the judgment's ineffective, unenforceable award of "fair rental value," with no specified amount, for the ex-husband's post-separation use of the family home.
R.S. 9:374C provides that a spouse who "uses and occupies ... the family residence pending ... partition of the community ... shall not be liable to the other spouse" for rental unless agreed by them or (beforehand) ordered by the court. Wochomurka v. Wochomurka, 552 So.2d 405, 406 (La.App. 1st Cir.1989), construed the substantially identical predecessor statute, R.S. 9:308B (as amended Acts 1986 No. 678), to deny rental absent agreement or order:
[T]here was no agreement by the parties or court order requiring rental payments on the home. The general rule of law that a co-owner has the right to use the common property without the payment of rent is controlling in this case.
In Defley v. Defley, 539 So.2d 928 (La.App. 4th Cir.1989), cited by the trial judge, the ex-husband did not "occupy" the family residence as a residence, but used it as a law office. R.S. 9:374 was inapplicable.
*748 The ex-wife is not entitled to have this court, by specifying an amount, convert the trial court's empty judgment into an effective, executable judgment.[13]
On the other hand, the ex-husband may not be entitled to recover from the ex-wife a full half of the $1,882.90 insurance, $11,664.41 maintenance costs, and $346.84 taxes on that home. C.C. art. 806 gives, to a co-owner who incurs necessary expenses, maintenance and repairs, reimbursement from the other co-owners in proportion to their shares. Art. 806 adds, however, that if the co-owner "had the enjoyment of the thing held in indivision, his reimbursement shall be reduced in proportion to the value of the enjoyment." This, too, is a question for the trial judge.

Uncompensated labor on separate property
The ex-wife claimed that the ex-husband's separate property had been enhanced in value by expending community funds (this is stipulated) and her own labor. She attributed all increase in value (above the funds expended) to her personal efforts, in employing contractors, paying bills, etc. The trial judge reasoned that this claim was not supported by the evidence. We agree that the claim was exaggerated and, while the ex-wife's work may have had some considerably lesser value, we cannot say that the trial judge was clearly wrong in awarding nothing, for lack of proof.

Stipulations of the parties
A supplemental "pre-trial" order during the trial listed several stipulations, as on values, which will enter into the judgment on remand. For example, it is agreed that $29,627.18 of community funds was expended on the ex-husband's separate property, and he is therefore indebted for that amount to the community.

Decree
The judgment is reversed insofar as it held that the ex-wife's funds from tort settlement and disability payments from pre-marital personal injury were community, and denied her credit against the ex-husband both for the $31,861.30 advanced to his separate estate and for half of the $26,970 advanced to the community (together with any other funds the trial judge may find traceable through purchases or through their deposit into joint accounts), as well as for half of the community's $29,627.18 spent on the ex-husband's separate property; and the matter is remanded for further proceedings not inconsistent with this opinion, and entry of a judgment of partition that allots assets and fixes monetary amounts due between the ex-spouses, all in accordance with R.S. 9:2801. Mr. McMorris is to pay two-thirds and Mrs. McMorris one-third of the costs of this appeal.
REVERSED IN PART AND REMANDED.
NOTES
[1] Judge William V. Redmann, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[2] E.g., the court simply awarded "fair rental value" for the ex-husband's use of the family home. It also held all debts were community obligations; ordered reimbursement of separate-fund payments of community debt "where such payments are documented"; and denied a claim for enhancement of the ex-husband's separate property by the ex-wife's labor.
[3] Damages from personal injury during the community are also separate, except those attributable to community expenses "or in compensation of the loss of community earnings." C.C. art. 2344. The ex-husband here cites the quoted language as if applicable to the ex-wife's separate damages and disability contract; but art. 2344 applies only to damages for "injuries sustained during the existence of the community" and Broussard refused proration of damages. In any case, attribution and proration of tort damages is complex, involving many factors such as percentages of fault, insurance limits, skill of the victim's negotiator, and amortization of future losses. Here, the total damage settlement of $55,000 could not have paid the prospective wife's loss of earnings from permanent disability of over $20,000 a year.
[4] The trial judge erroneously relied on Cason v. Cason, 564 So.2d 808 (La.App. 3d Cir.1990), in which the injury occurred during marriage. And, as to tracking, the evidence found lacking in Cason is not comparable to that of this case discussed below.
[5] The insurance adjuster testified that naming both spouses was simply a precaution to avoid possible future consortium-loss claim, and that the payment was solely for the ex-wife's damages.
[6] But see Aldredge v. Whitney, 591 So.2d 1201 (La.App. 2d Cir.1991). There a fiancée suffered an apparently minor pre-marital injury. After marriage, she developed a ruptured disk from the pre-marital injury, at a time when her former fiancé had become her husband. The husband was held entitled to sue for consortium loss "because he would have had a cause of action for wrongful death."
[7] Katherine S. Spaht and W. Lee Hargrave, Matrimonial Regimes (16 La. Civil Law Treatise), § 3.40, at 119-20 (1989), note the vagueness of "inconsequential." They discuss cases, of which Reeves v. Reeves, 607 So.2d 626 (La.App. 2d Cir.), writ denied 608 So.2d 1010 (1992), deemed inconsequential the largest amount: $7,030 of community funds that the husband paid as boot to take a $38,340-value inheritance partition share. § 3.40 at 55 (Supp.1994).
[8] Thus, for example, a wife whose separate $100,000 has been used for the community benefits to the extent of $50,000 by the $50,000 increase in value of her own half of the community; and art. 2367 obliges the husband to reimburse her the other $50,000 out of his half of the increased community: "The liability of the spouse who owes reimbursement is limited to the value of his share in the community after deduction of all community obligations."
[9] Spaht and Hargrave, at 54 (Supp.1994), discussing Landwehr v. Landwehr, 547 So.2d 752 (La.App. 4th Cir.1989), speak of the trial court's erroneous, but widely held view that simple commingling of separate and community funds makes the whole checking account community....

[C]ommingling does not make the whole account community. It ought to be clear under Civil Code Article 2338 that it is only when a nonfungible thing is acquired with separate and community funds that it is classified as community. Fungible items, including bank accounts, are not within that rule and if tracing can be done, a part of the funds can be separate and a part community. Furthermore, in this case, even if the account was considered community funds, it was still available for the husband to prove that some of the separate funds were used to pay community debts.
The same authors, at 55 (Supp.1994), also analyze Young v. Young, 549 So.2d 437, thus:
The wife admitted that she did not have sufficient funds to purchase the disputed property. "Accordingly, we find the separate funds used for [four items of property] are clearly traceable." [Id. at 442.] The court then concluded that the husband was entitled [to] reimbursement of ½ the value of the separate property when it was used to make the purchase of community assets.
[10] Thibodaux v. Thibodaux, 577 So.2d 758, 759 (La.App. 1st Cir.1991), did not decide any dispute over commingling: "Mr. Thibodaux does not dispute the trial court's factual conclusion that the separate funds were commingled with community funds and lost their separate character...."
[11] This writer notes his individual view that, from art. 2361's presumption that all debts are community (except those defined as separate by art. 2363), a presumption follows that all payments of debts, thus all expenditures, are community. Hence, contrary to the pre-1979 case of Succession of Sonnier, 208 So.2d 562 (La.App. 3d Cir.1968), it may be a more reasonable presumption that funds withdrawn from the mixed account come from the community funds there, to discharge community obligations.
[12] The house was valued at $85,000. The furnishings were valued at $6,827.00. The ex-husband, however, also has a claim for the value of his separate property contributed towards buying the community home, including the obligation of the ex-wife's mother (which is not the ex-wife's obligation) for the land and trailer he sold to the mother.
[13] The ex-husband did not appeal or answer the ex-wife's appeal, and is therefore not entitled to any modification in his favor of the judgment appealed. C.C.P. art. 2133A. But C.C.P. art. 2133B allows any argument in support of the judgment appealed, and R.S. 9:374C supports leaving this part of the judgment in its ineffective, inexecutable, worthless state (though clarity would justify the trial court's eliminating it in the final judgment); and C.C.P. art. 2164 authorizes the appellate court to render any judgment that is just on the record.